DECISION AND JUDGMENT ENTRY
{¶ 1} Technical Construction Specialties, Inc. ("TCS") appeals the decision of the Erie County Court of Common Pleas denying its motion in limine, allowing evidence of its breach, and finding in favor of Shenigo Construction, Inc. ("Shenigo Construction") at trial. Because TCS failed to object to the evidence at trial and the verdict was not against the manifest weight of the evidence, we affirm.
 {¶ 2} Shenigo Construction was the general contractor for an apartment complex, owned by Timber's Edge Development Company ("Timber's Edge"). Shenigo Construction contracted with Nufloor Systems, a division of TCS to install a specific type of subfloor. Under the contract, Nufloor agreed to "provide all labor, materials, and equipment required to install gypsum underlayment over metal lathe and acousti-mat surface" for building TE-20. TCS had previously worked on building TE-22 for Shenigo Construction. In addition to pouring the gypsum underlayment, Nufloor Systems supplied the acoustic-mat sound padding, which Shenigo Construction was to install. On April 16, 1996, TCS's crew poured the gypsum floor. Shortly after, problems arose with the floor, and TCS was not paid for its work on building TE-20.
 {¶ 3} Shenigo Construction filed a lawsuit against TCS and others as the result of problems at the Timber's Edge apartment complex. TCS filed a counterclaim for the money owed on the TE-20 job. Shenigo Construction settled and dismissed its complaint, and TCS dismissed its counterclaim without prejudice. Approximately a year later, TCS refiled its counterclaim as the complaint in this action. The case was tried to the bench, and the trial court returned a verdict in favor of Shenigo Construction. TCS now appeals and sets forth the following three assignments of error:
 {¶ 4} "I. The trial court erred by failing to grant plaintiff's motion in limine.
 {¶ 5} "II. The trial court erred by permitting defendant to present evidence of alleged damages and breaches by plaintiff.
 {¶ 6} "III. The trial court's decision is against the manifest weight of the evidence."
 {¶ 7} In the first two assignments of error, TCS argues that the trial court erred in denying its motion in limine and allowing Shenigo Construction to present certain evidence. In the third assignment of error, TCS challenges the trial court's ruling.
 First Assignment of Error {¶ 8} A ruling on a motion in limine is a ruling to exclude or admit evidence. State v. McElroy (Sept. 22, 2000), Mahoning App. No. 99 CA 70. An appellate court does not directly review the rulings on motions in limine. White v. Center Mfg. Co.
(1998), 126 Ohio App.3d 715, 722. The reason behind this is that a trial court's initial denial of a motion in limine does not preserve any error for review. State v. Hill (1996),75 Ohio St.3d 195, 202-203. Rather, it is a "tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipated treatment of the evidentiary issue." State v. Grubb
(1986), 28 Ohio St.3d 199, 201-202. The trial court is at liberty to change its ruling once the hearing or trial has begun.Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4. Therefore, finality does not attach when a motion in limine is decided and those decisions are not final orders. Id. For this court to review a trial court's decision regarding a motion in limine, a party must object when the issue is actually reached at trial.Grubb, supra, at 203; Hill, supra. at 202-203.
 {¶ 9} In the first assignment of error, TCS challenges the trial court's ruling on its motion in limine.[1] Because this court does not directly review a ruling on the motion in limine and TCS failed to object to the admission of the evidence, the first assignment of error is not well-taken.
 Second Assignment of Error {¶ 10} In the second assignment of error, TCS contends the trial court erred in allowing Shenigo Construction to present evidence of its alleged breaches because the doctrine of res judicata precludes a relitigation of this issue. TCS argues that because Shenigo Construction settled and dismissed with prejudice its claim that TCS breached the contract, it is precluded from using this as a defense in present action for payment on the contract.
 {¶ 11} A review of the record indicates that TCS failed to object when the witnesses testified about TCS's alleged breach of the contract. The only time TCS objected on the basis of res judicata was when Shenigo Construction asked to have exhibit F admitted into evidence at the conclusion of the bench trial. Failure to object to the evidence at trial constitutes a waiver and does not provide a basis for reversal absent plain error.State v. Maurer (1984), 15 Ohio St.3d 239, 259-260. Therefore, TCS has waived this assignment of error to all evidence except exhibit F.
 {¶ 12} The admission or exclusion of evidence is generally left to the discretion of the trial court. Maurer, supra. at 265. The doctrine of res judicata has two components, issue preclusion and claim preclusion. Claim preclusion (estoppel by judgment) prevents a party from relitigating a cause of action that was raised or could have been raised in a prior action arising out of the transaction or occurrence that was the subject matter of the previous action. Grava v. Parkman Twp. (1995),73 Ohio St.3d 379, syllabus. Issue preclusion (collateral estoppel) prevents parties or their privies from relitigating facts and issues "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." Thompson v. Wing
(1994), 70 Ohio St.3d 176, 183.
 {¶ 13} Shenigo Construction did not present a claim for relief in this case; therefore, claim preclusion is not applicable. In addition, the previous matter was settled. Issue preclusion requires that the fact or issue actually be litigated and determined by a court; thus, issue preclusion also does not apply here.
 {¶ 14} Furthermore, TCS did not satisfy its burden of proving identity of the issues. "Where a judgment is relied upon as determining an issue against a party to the judgment and estopping that party from relitigating that issue, the one so relying on that judgment must allege and prove that the judgment necessarily determined that identical issue." First Natl. Bankof Cincinnati v. Berkshire Life Ins. Co. (1964),176 Ohio St. 395, paragraph one of the syllabus. In support of its argument, TCS merely attached a copy of the settlement judgment entry on the first case to its motion in limine. This document, however, does not reveal what issues or claims Shenigo Construction presented in the previous case. Shenigo Construction's president testified at trial that TCS had also been contracted to pour the gypsum underlayment for building TE-22. While the previous lawsuit concerned TCS's and the gypsum manufacturer's failure to specify the need for metal lathe in high traffic areas when the underlayment for building TE-22 was installed, here the issue is TCS's performance under the contract for building TE-20.
 {¶ 15} Based on the above, we find that the doctrine of res judicata was not applicable and that the trial court did not err in admitting the evidence. TCS's second assignment of error is not well-taken.
 Third Assignment of Error {¶ 16} In the third assignment of error, TCS argues that the judgment of the trial court was against the manifest weight of the evidence.
 {¶ 17} We first note the proposition that we must defer to the trial court as the finder of fact. The trial court was in the best position to view the witnesses, observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Accordingly, a reviewing court should not substitute its judgment for that of the trial court. Id. The decision of the trier of fact, be it the judge or jury, will not be reversed as being against the manifest weight of the evidence as long as it is supported by some competent, credible evidence going to each of the essential elements of the case. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus; Vogel v. Wells (1991),57 Ohio St.3d 91, 96.
 {¶ 18} In addition, we note that the trial court entered a general judgment for Shenigo Construction, without any explanation of its rationale. This was permissible since trial courts do not have to issue findings of fact or conclusions of law unless a party files a request under Civ.R. 52. Where a party fails to request findings of fact and conclusions of law, we must presume the regularity of the trial court proceedings. See,Bunten v. Bunten (1998), 126 Ohio App.3d 443, 447. Therefore, TCS faces a difficult challenge.
 {¶ 19} TCS argues that it substantially performed the contract; that even if it failed to substantially perform, it is entitled to the value of its work and material supplied less Shenigo Construction's damages; and that Shenigo Construction waived the right to demand strict or substantial performance because it accepted nonconforming or defective performance.
 {¶ 20} First, in order to succeed on a breach of contract claim, the plaintiff must show (1) the existence of a binding contract; (2) that the plaintiff performed its contractual obligations; (3) that the defendant failed to fulfill its contractual obligations without legal excuse; and (4) that the plaintiff suffered damages as a result of the breach. SS PalletCo., Inc. v. Delta Asphalt Co., Inc. (Apr. 11, 2001), 9th Dist. No. 20170, citing Garofalo v. Chicago Title Ins. Co. (1995),104 Ohio App.3d 95, 108. "In a civil case, a plaintiff is to prove his case by a preponderance of the evidence." RenaissanceTechnologies, Inc. v. Speaker Components, Inc., 9th Dist. No. 21183, 2003-Ohio-98 at ¶ 15, citing Lewistown Foundry MachineCo. v. Hartford Stone Co. (1915), 92 Ohio St. 76, paragraph two of the syllabus.
 {¶ 21} Edward Sheeler, president of TCS, testified that he was present when the gypsum underlayment was poured. He gave his opinion that the subfloor was properly poured. He admitted the crew had a problem raking the gypsum because the pins would catch on the wire mesh. He explained that he used bulkheads at each doorway and a wooden ruler to ensure the depth of the pour, but admitted that he did not use bulkheads at the closet doors and did not measure the depth of the gypsum in the closets. Sheeler testified that it was a month later that Shenigo Construction called about problems with the gypsum underlayment. He inspected the subfloor and discovered some cracking in the closets where Shenigo Construction had failed to install wire mesh. In addition, the acousti-mat was doubled up in the closets and there was a layer of debris under the acousti-mat. Sheeler also attributed the sanding of the subfloor to Shenigo Construction's failure to cover the subfloor while allowing people to work on it.
 {¶ 22} On its behalf, the defense called Doug Downs, General Superintendent for Shenigo Construction; Thomas Singler, Director of Operations of Timber's Edge; and Patrick Shenigo, President of Shenigo Construction. All of the defense witnesses were also present while the gypsum underlayment was being poured. Downs and Shenigo testified that the mixture looked thinner than previous mixes. Singler and Shenigo testified that they saw wire mesh protruding out of the gypsum subfloor in spots during the pour. According to Downs and Shenigo, the subfloor took longer than normal to set. They also stated that the subfloor looked a chalky white rather than its usual color, a battleship gray.
 {¶ 23} All of the defense witnesses stated that the subfloor cracked in the main rooms and bedrooms of the apartments, although the most extensive cracking was in the closets. Exhibits J-1, J-3, and J-4 show some of the cracking that existed outside of the closet areas. Downs indicated that once a subfloor starts to crack it is not going to stop. As a result of the cracking, Downs and Shenigo testified that the gypsum underlayment in the closets had to be removed. They disputed that TCS removed the subflooring and that Sheeler was present during the removal. According to them, Shenigo Construction employees did the work. Shenigo testified that the cracks in the rest of the subfloor have gotten wider and longer over the years and that the subfloor would not last the life of the building as is should have.
 {¶ 24} Downs and Shenigo also testified that the gypsum underlayment started to sand almost immediately, meaning a layer of dust would form on the top of the subfloor when something rubbed over its surface. Downs indicated that just running a hand across the subfloor would bring up a surface of dust. If allowed to go untreated, the sanding would have caused problems with laying the carpet and tile flooring. Shenigo testified that to remedy the sanding problem they had to seal the rest of the subfloors, which they normally did not have to do.
 {¶ 25} Shenigo acknowledged that wire mesh was not put in closet areas but stated that Sheeler and the manufacturer of the gypsum informed him that the wire mesh was needed only in high traffic areas and in the hallways to strengthen the floors. He also stated they have never had to protect a gypsum underlayment before this. The defense witnesses attributed the problems with the subfloor to TCS's failure to pour the gypsum underlayment to a one-inch depth. Several samples were measured during trial by various witnesses, and none of the samples measured one-inch.
 {¶ 26} Based on the conflicting evidence and the deference owed to the trial court, we find that there was some competent, credible evidence which supports the conclusion that TCS did not substantially perform its obligations under the contract.
 {¶ 27} Secondly, TCS asserts in its brief that, even if the work was not done according to the contract, TCS should be awarded the reasonable value of the work performed and the materials supplied. In support of its argument, TCS cites toMurray v. Marbro Builders, Inc. (1977), 53 Ohio App.2d 1, 3, which states that when the defaulting party's work has contributed substantial value to the other party's property, the breaching party should be able to "recover the value of work and materials on a quantum meruit basis, the recovery being diminished, however, to the extent of such damage as the [defaulting party's] breach causes the other party." There is no evidence TCS's work contributed substantial value to the property, however, because Shenigo Construction had to engage in several corrective measures and the subflooring still has extensive cracking and will have to be replaced eventually.
 {¶ 28} Finally, TCS argues that Shenigo Construction accepted the nonconforming performance and therefore has waived its right to strict or substantial performance. TCS contends that Shenigo Construction has kept and used the floor for the past seven years. Patrick Shenigo testified that he called TCS a week to two weeks after the initial pour to have TCS correct the problems with the subfloor. He also stated and exhibit F shows that Shenigo Construction hired people to seal the subfloors and that Shenigo Construction also undertook some corrective measures. This behavior does not indicate that Shenigo Construction accepted the nonconforming performance.
 {¶ 29} We conclude that the trial court's decision was not against the manifest weight of the evidence. TCS's third assignment of error is not well-taken.
 {¶ 30} Based on the above, we find that substantial justice was done the party complaining. The judgment of the Erie County Court of Common Pleas is affirmed. Costs are assessed against appellant.
Judgment affirmed.
Handwork, P.J., Lanzinger, J. and Singer, J. concur.
[1] A review of the docket shows that no judgment entry ruling on this motion was filed. Counsel represented to the judge presiding at trial that the motion had been denied by another judge at a pretrial conference.